The next case for argument is 17-1460 Fulcher v. Secretary of Veterans Affairs. Mr. Schoenfeld. Good morning. May it please the court, Alan Schoenfeld, counsel for petitioners. After doing all the work necessary to institute the requested rulemaking, including preparing a draft notice of proposed rulemaking and conducting the financial impact analysis, the VA notified Congress that it was abandoning the project and that rulemaking was not imminent. That was nearly two years ago. The agency has done nothing in the meantime, and yet it argues before this court both that it has not denied the petition and that any decision it has reached with respect to the petition is not final. Now you filed this eight months in, and now, as you say, we're about two years in. The petition previewed with this court, correct? Right, right. Are you aware of any case where passage of certainly eight months or less than two years has warranted, has concluded that it was an unreasonable delay by the agency? So the answer is yes. I would point to Families for Freedom, which was a two-year delay. I think, I just want to make two points. The first one is we think that the petition has been denied, and so the track delay consideration is a... No, I understand that. And also, I think the relevant time period is between the filing of the petition for rulemaking and today. The question is a practical one. How long has the agency delayed ruling on the petition? So if the court concludes that the November 2016 letter was not itself a denial, I think the relevant inquiry is, has the two years that intervened between our filing the petition and today constituted an unreasonable delay in time? And certainly under the track factors, the delay itself is only one of six factors. And the other factors, I think, all weigh in favor of this court finding, if it finds that it was not in fact denied, that it has been denied in effect by the passage of this... Really, do you think all of the factors weigh in favor? I mean, this is one in which, to put it probably too simply, health is on both sides of the balance to the extent that there's a question of resource constraint and priorities. I don't think that's right, Your Honor. I think that the agency has reached the conclusion that sex reassignment surgery is medically necessary in certain cases, and we're moving the exclusion. The agency has really? The VA. How is that? The notice of proposed rulemaking, which reflects the view of the agency, and in fact, the letter... I'm sorry. All we have in this is an unsigned, undated draft of a notice of proposed rulemaking not adopted by who I assume the secretary is the only one with actual statutory authority. I think that's right. I would point to the letter from the Undersecretary for Health, then Undersecretary Shulkin, speaking explicitly on behalf of the department, recognizing the agency's... This is that probably garbled sentence that must mean that, even though it doesn't quite say that. I think it's earlier where the agency says... What are you looking at? Increased understanding of both gender dysphoria... I'm sorry. It's the letter. It's either one. Right. That sentence is garbled, but I think it does mean what you say. So what it says, speaking on behalf of the department, is increased understanding of both gender dysphoria and surgical techniques in this area has improved significantly and is now widely accepted as medically necessary. Right. I just mean it's not the increased understanding that's now widely accepted. It is widely accepted that sex reassignment surgery is medically necessary in a particular case. So can I ask you this question? Here's a scenario, and there may be pieces of it, but suppose I weren't quite sure whether the November letter was a denial or not. Suppose I thought it was a denial, but that the right remedy for that would be what the government says, which is a remand for an explanation of the denial. Suppose I also thought that they have not really given much of an explanation for the period of time that has elapsed since the request and say today. And in either event, the remedy would be remand for an explanation. Either we have denied it, and here's the reasons that we've denied it, or we haven't really denied it or are not now denying it, but we need more time. Doesn't that amount to the same thing, a remand for the VA to speak with considerably more clarity than it has yet done about this issue? Without even deciding whether the delay is unreasonable because we haven't. There's that one sentence which you highlight, I think, in your reply brief, one sentence in the red brief that says the reason for the delay is that we're still thinking about it, which doesn't say why it's taking so long. That's certainly right. I think the case law has been clear that this court does not defer blindly to an agency's delay justification. You need to inquire as to why it's happening. But to answer your question more directly, I do think it is correct that if you were to reasoned explanation for its activity with respect to the petition under the denial case or under the track case, that remedy would be the same. I don't see a meaningful distinction between the two forms of remedy. But you've asked for a stronger remedy, which is they've denied it, forced them to institute. Absolutely. Or whatever. Yeah. The remedy we would prefer here is for this court to order them to undertake the rule making that they've proposed, and we think that recognizing that remand is the ordinary rule in cases where the agency hasn't considered the issue. Here, the agency has considered the issue. The notice of proposed rulemaking, recognizing all the faults, Your Honor. Right. This term, the agency, I guess maybe I'm improperly. But anyway, I'm a little bit stuck on what that means. The secretary is the one with the authority, and there's no secretary sign-off on whatever that spring 2016 notice is. There is no requirement under the APA that it be final secretary authority. It's final agency action. And here, you have agency action. The agency has assembled the record, which demonstrates its consideration of the petition for rulemaking, and included in there is a notice of proposed rulemaking signed off by staff members within the agency, who have indicated we have deliberated upon all the information. And this is the rulemaking we proposed to institute. But it was withdrawn before it was published, right? That's correct, Your Honor.  The proposal and still changed their mind at the last minute without subjecting it to APA review? I don't think that's correct, Your Honor. The question before the court on a petition for rulemaking where it's been denied is, are there objective practical indicia that the petition has actually been denied? If they had withdrawn the notice of proposed rulemaking, but there was no petition for rulemaking, I wouldn't say that that action standing alone would be subject to final agency review. The question before this court is, what is the final agency action with respect to the petition for rulemaking? Has the agency denied it? The agency has communicated to members of Congress that further activity with respect to this subject matter is not imminent. The question before this court, as the D.C. Circuit put it in Ciba Gagee, is, is the agency at rest with respect to this issue? And it is. Suppose there were a kind of, you know, in another case, an agency, say EPA, says, we've got this room, this issue before us about some potential, you know, petition for us to declare some level of some chemical to be improper under some relevant statute. And the agency says action is not imminent because actually this is going to take years for us to get a reliable determination. The scientific part of economic balance, not imminent doesn't quite mean at rest. In that case, because the agency has given a reasoned explanation for why it's not imminent, and it has intimated that it will take action once it collects the requisite scientific data, I think that the indicia of finality are lacking. Here, the record that the agency itself assembled says we have deliberated upon all the information. We recognize that a factual predicate of our 1999 rulemaking is no longer valid. We are going- I mean, the difficulty I have with relying on that proposed rulemaking is you're somehow incorporating that into these letters to Congress to suggest that that's the part of all of the record. But I'm not sure their letter to Congress necessarily relies on any of that. Even if, Your Honor, even if the court were to look only at the letter to Congress, I think there are sufficient indicia of finality to find that that reflects a denial. It is from a person charged with authority by the agency, the Undersecretary of Health, speaking explicitly for the department, communicating an official correspondence with 47 members of Congress with respect to their inquiries on the notice of proposed rulemaking, specifically with respect to that notice of proposed rulemaking, indicating to Congress that further activity on that notice of proposed rulemaking is not imminent. That's the letter standing on its own. That, to me, and under the case law, is sufficient indicia of finality. In the intervening 18 months, the agency has taken no action with respect to this issue. There is nothing in the record that the agency points to. They filed their brief in November of 2017. The only activity with respect to this petition for rulemaking that they point to predates their sending of the November 10, 2016 letter to Congress. Can I ask you a completely different question? You've carried out a pretty impressive number of amici briefs. All of them seem to suggest that this is medically necessary. It seems to be the consensus of the medical profession. Are you aware of any opposing views from well-established medical organizations? No. Are you aware of how this is dealt with in private insurance companies? Are private insurance companies generally covering these procedures or not? They are increasingly covering these procedures. I don't know how the market hashes out, but it is commonplace for private insurers to cover this. What about Medicaid? Medicaid, there's a national coverage determination in the Medicaid program covering sex reassignment surgery and medically necessary cases. And Medicare? I don't know the answer to that. You cite in one of the briefs where you talk about this, the federal health program, and you cite to this, I don't know if you have it in the record, but you cite to a notice that OPM put out in the end of 2015, stating covered benefits for gender transition services effective January 2016, no carrier may have a general exclusion of services, drugs, or supplies related to gender transition or gender transformation. Is your read that that clearly covers sex assignment surgery, requires covering? And that's because it says you may have, you can't have a general exclusion of services. So the issue is the record... Because here they do provide some, under the VA program that you're challenging, they do allow for some services, they just exclude sex transformation. So I understand the point. The way I read that carrier letter is to say, you may not have a categorical exclusion for any of these services that may be recognized as medically necessary in a particular case. So what the regulation does is it says no matter the medical need, the VA may not provide itself or through its network of providers, sex reassignment surgery, no matter the medical need as determined by VA clinicians. What the notice of proposed rulemaking would have done is it proposed a rule under which sex reassignment surgery is available in cases where VA clinicians determine that in a particular case, sex reassignment surgery is medically necessary because other interventions, hormone therapy, psychotherapy, whatever else, are insufficient to cure gender dysphoria. To be clear, the substance of the rulemaking that might eventuate from this process is not before this court. We obviously have our views about what we think is constitutionally required and what's mandated by Section 1710. Can I ask you, would it be proper for the agency not to issue a notice of a proposed rule, the content of which is to eliminate the exclusion, the C, whatever exclusion is, but something essentially neutral, that is we're considering keeping it, we're considering eliminating it, we now go through a comment period without saying our initial view is one way or the other, whether by advance notice of proposed rulemaking or by some other mechanism? I think that's certainly within the agency's discretion. The opportunity for rulemaking, simply an opportunity for the agency to gather information, gather public comment, it's the democratic part of the rulemaking process. The agency doesn't have to put a thumb on the scale one way or the other, but our view is that what the record reflects is that the agency has reached the conclusion that this is an important issue worthy of initiating a rulemaking process. The D.C. Circuit has repeatedly recognized, I understand this is not the D.C. Circuit, but the APA case law is more comprehensive there. The D.C. Circuit has repeatedly recognized in WWHT and NRDC versus the SEC, where an agency recognizes the importance of the issue and makes clear its view that the issue is worthy of rulemaking, rulemaking needs to happen. There's no thumb on the scale from the court. There's no interference by the court in the rulemaking process. What kind of considerations, if any, would you think reasonable even if you would argue against them of the sort? We have other priorities. Our agency is struggling with all kinds of issues. The process of doing a rulemaking on this would be both contentious and difficult. We actually think we would need to not just take the AMA House of Delegates resolution at its face value, but investigate the process that led to that, investigate the underlying publications along the lines of the way the Defense Department recently did in its February. That's a major effort, and as a priority matter, we don't think it's the right way to spend our resources. Can you comment on that? Sure. If the agency had made that argument and then made a specific showing that the agency's prioritization of issues required deferring this rulemaking, that may be something that's entitled to some agency deference here. The case law is clear that this court doesn't simply blindly defer to the agency's need to reprioritize certain issues or blindly defer to the agency. Would you treat that, I mean, just to sort of introduce a sub-question, you could read that in one of two ways. You could say, well, that's clearly a denial because they've come up and told us in the foreseeable future we don't have the resources. Would you construe that as a blanket denial that you get them to challenge, or is that something that you view as them just putting a pause on it and not a final decision on whether to proceed? I understood Judge Taranto's hypothetical to say we are not doing this because there are other agency priorities that take precedence, and so I would assume that that communication entailed an actual denial. We could then challenge it as arbitrary and capricious or otherwise, but I took your hypothetical to mean that the agency was offering a reasoned explanation. I will adopt that interpretation. I took your hypothetical to mean that the agency had in fact denied it. We have to use you as a surrogate to get clarification. So I think in a circumstance where the agency says to this court and makes a specific reasoned showing that other issues take precedence and that this issue is particularly complicated, courts have been forgiving of agencies where they need multiple years to assemble a particular record. The data is technical. Things are complicated. That's not this case. Can I ask one other thing? Am I right that one of the other listed exclusions in the regs is for abortion services? Yes. And even medically necessary ones? Yes. So what's the statutory justification? I realize you don't want to give away other people's channels. I mean, I would assume it's the Hyde Amendment, which precludes the expenditure of any federal funds. So there's another statute. Okay. It's a recurring rider to a budget bill. Some other statutory constraint. Okay. And that is emphatically not an issue here. But, you know... So is that an issue for the VA? Are they worried if they adopt or they get rid of this exclusion that Congress is going to come in and legislate a new exclusion mandating them to do this? I don't know if that's the agency's view. I think that's always a risk. When an agency undertakes regulatory action, there's always the risk of legislative override. But that's not a reason... And we would... I think our position would be if Congress were to legislate that no federal funds could be spent for sex reassignment surgery, our view would be that's unconstitutional. That's, again, not an issue. Right. So that's subject to judicial review. Absolutely. That's not an issue before this court today. But, you know, the agency... I understand the quibbles some members of the court have with the idea of speaking about the agency. But the VA, acting through its officers, has made the determination that sex reassignment surgery is medically necessary in certain cases. That is consistent with the only established medical consensus on this issue. To go back to your point, though, Judge Strato, it may be right in particular cases that the agency needs the time to sift through complicated data to... The cases talk about delays of four years or six years where the agency is sifting through a really complicated record. That's not this case. The agency has done the work in the agency's own words. It has deliberated upon all the information. The next step is to institute a rulemaking. Yeah, but I guess I'm not really sure whether that's right, in part because the agency is not the one with congressionally delegated authority. It's the secretary and the process has not been completed. Can I just answer that? I respectfully disagree because I think you're mistaking the secretary's authority to promulgate regulations with the question of final agency action. There is no requirement that for finality to attach. Are we talking about the Shulkin letter now or about the spring 2016 draft unsigned notice? The Shulkin letter is what we rely on as an indication of the agency's determination of finality. Okay, can I ask a different question? If there were an individual who sought this surgery and asked the VA and the VA said no, could that individual bring a individual as applied challenge alleging, among other things, the kind of statutory or constitutional discrimination grounds? Yeah. Are you aware of whether that has happened? I'm not aware of that having happened. That obviously would go from the agency itself to the Board of Veterans' Appeals to the Court of Appeals for Veterans' Claims to this court on that route. And I think that there may be jurisdictional questions about which of those courts has the authority to decide a constitutional issue. But yes, it could be decided in an individual case. We've elected this vehicle in part to seek relief for the members of TAVA, one of the petitioners, and the hundreds of veterans who are being denied medically necessary care by their sole medical provider. So I see my time as well. OK. Will we start? We've got some more time. Thank you. Good morning, Your Honors. May it please the Court. Catherine Dorsey on behalf of Respondent Apley, the Secretary of Veterans Affairs. Petitioners here rely on two- Since the November 2016 letter to Congress, are you aware of any agency action whatsoever on this issue? I can't point you, Your Honor, to anything specifically that they have done on the petition. But I would remark that that's not unusual in the case of agency action in responding to a petition for review that- Well, it may not be unusual, except when you have a letter to Congress that says we're not going to take any further action on this absent an appropriation from you. Your Honor, with all due respect, I disagree with that characterization. That's not, in fact, what the letter says. The letter says, and I quote, VA has been and will continue to explore a regular regulatory change that would allow VA to perform gender alteration surgery. And then it also says the VA has begun considering factors impacting this rulemaking process. And then says, although they don't anticipate the rulemaking to become- But what is it? But the sentence, the first sentence you were referring to concludes with when appropriated funding is available. Correct, Your Honor. And we don't, again, the agency, of course, the agency's position is that this letter was not intended to be a denial of the rulemaking petition. And so it contains no reason- What does that- Explanation that you would expect in a denial of a petition- What does that reference to appropriated funding mean? Does VA get appropriated funding to treat individual conditions or disabilities or diseases? No, Your Honor, it's unclear exactly what that means in the letter. And that is why we have said- Has VA ever relied on a lack of appropriations to deny medically necessary treatment? Not that I'm aware of, Your Honor. Of course, it has appropriated funds and it has to stay within those to cover the general medical benefits, but not on a particular- And do you happen to know what percentage? I think the calculation in the record may be something like the cost of $17 million when the calculations were done. I assume the general appropriations, that must be an absolutely minuscule portion of the entire appropriations. That is, Your Honor. And again, this is all- We don't think the letter functions as a denial. We don't think even if this court construed that letter to be a denial, that it contained the reasoned decision-making that would be necessary for this court to review a denial of the petition under Section 502. And of course- So if we construed it as a denial, you're asking us to send it back then and allow you the opportunity to give a reasoned basis for it. That's correct, Your Honor. What if we were to conclude there was an unreasonable delay? What would your view be in terms of what our next step would be? Again, just as a premise, we don't think there is an unreasonable- No, of course. I'm happy to discuss that later, but if the court were to find that there was an unreasonable delay, then we think the agency could direct, that the court could direct the agency to respond to the petition for review, either to grant it or deny it. Presumably within a certain amount of time. Correct, Your Honor. Of course, if you were to do that, to give the agency as much time as it- Well, what would you, do you have any, I mean, 30 days? I mean, do you have any view in terms of what's feasible under these circumstances where the predicate of my hypothetical is we found an unreasonable delay? I think we would assume that we needed to put a timeframe on it. Your Honor, if the court were to go there and we would request at least 120 days because that seems consistent with other cases where this court ordered the VA to act and given all its other obligations, we think that, and given the fact also that this petition now has just been pending for two years, which goes to our understanding that we don't think there's been any unreasonable delay here, but we would ask respectfully if you were to go there would the agency at least be given- And if we thought that we don't actually know whether there's unreasonable delay because we haven't been given any meaningful explanation, there's really that one, I don't know, tail swallowing sentence in your brief that says no unreasonable delay because we've been thinking about it, which doesn't seem to me to actually give any reasons. So if we thought it was essentially a present unexplained delay, what would we do? Well, I would think in that case, Your Honor, that there wouldn't be jurisdiction because there only gets to be jurisdiction under 502 and under the track analysis if this court determines that there is an unreasonable delay such that the court has to protect its jurisdiction. Otherwise, given that there's not a denial here, there's not jurisdiction under 502- But how do we, I mean, I know it seems to me a little bit odd if we can't tell if there's an unreasonable delay because you haven't articulated what you've been up to or why you haven't been up to this because of other priorities or what reason there is for the lapse of, I guess, now two years. But I don't think that's uncommon in the track analysis that this court and the D.C. Circuit have performed in other cases because you usually look to what is in the record at the time and the passage of time here, it's been just under two years and as Your Honor pointed out in your earlier question, there have really been no cases that have found unreasonable delay in under two years. I think the Families for Freedom, I think even that case was a two and a half year delay, but most of them have been substantially longer. In the track case itself, I assume you recall the details, I think they didn't find any delays to justify mandamus, but they did think there was a basis for retaining jurisdiction. And so even though the mandate issued in that case, they required FCC to come in every period of time and I guess is it your understanding to tell them what the status is or to explain why there is continuing delay? I think in that case it was to explain the status rather than the continuing delay, it was my understanding. Is that typically, I mean you have more experience in the DC circuit cases than I, I mean is that something that courts would typically, when they find no unreasonable delay, is it very uncommon for the court to retain jurisdiction for purposes of monitoring? I would think it would be, Your Honor, in part because- Would be common or uncommon? It would be very uncommon because in part, the whole reason of not having a review until after their final agency action is to let the agency complete its process and also so then that this court would have a complete record to review that and determine whether a denial of a petition for rulemaking on the record is arbitrary and capricious or not. Can I just ask this question? Why has it taken so long? We have no explanation in the record to support a denial and we don't even know whether the agency at this point is going to deny the petition or grant it. It is still pending before the agency and there are a number of reasons we could speculate about, Your Honor, about why this could be taking long. There's a lot of medical uncertainty. How do we find out? How do we find out? Well, I think what normally happens, Your Honor, is that the agency completes its review of the petition for rulemaking, issues a denial or a grant, and then this court has to review. That's how we would find out what the agency, the delegated agency, had thought about the petition. How do we find out whether the delay in getting to a decision is unreasonable? No, but Your Honor, that would also illustrate what the agency has been doing over that time. But the general procedure is that the court reviews it at the end of that process. It doesn't come in the middle. We don't need the unreasonable delay test, though, if we have a final agency decision. That's correct. I think what we're concerned about is how do we even know if there's an unreasonable delay here? Because VA hasn't put anything in the record about what it's been doing since fall of 2016 when it wrote this letter to Congress. I don't think that's right, Your Honor. Here, it's been less than... It's not right that you haven't put anything in the record or it's not right that we can't review it. It's not right that there's been an unreasonable delay here because they haven't put anything in the record. There is information in the record. There's the notice of proposed rulemaking, which indicates that the agency has been considering the issue and decided what to do. I know you point to a lot of cases that say two years isn't enough, but when it's such a significant and potentially deadly health issue, why isn't two years unreasonable? Well, Your Honor, again, because it's not two years where it's just been agency recalcitrance. If that was what we had there, it might be a different situation. The only thing in the record is activity up to November 2016. We don't know one way or another whether anything's going on. You can't represent to us one way or another whether anything specific is going on. Well, we have the representation in the letter to Congress, which says that the VA has begun considering the factors. It has been and will continue to explore regulatory change. We have the notice of proposed rulemaking. When appropriated funding is available, that to me, I mean, again, that is a very weird description for what VA is going to do, but it suggests to me that they've said, we're not going to look at this anymore until you tell us it's okay. And again, we are saying that the VA is saying that is not a reason that would support a denial of a rulemaking petition, if that's what. Even if we agree with you that it's not a denial, it does suggest that maybe they're still not doing anything on this until they get appropriated funding. I don't think that's right, Your Honor. I think it's- What does that mean? This is all we have. We have nothing else. The proposed rulemaking doesn't help you at all because it speaks very strongly for why this proposed exclusion or this exclusion should be gotten rid of. Well, I would disagree with that, Your Honor, because the notice of proposed rulemaking, as we've been discussing this morning, it wasn't signed by the secretary. It was withdrawn. It was never published. I'd say a good analog case to show why that can't really have any import here is the case cited by petitioners, the public, in their opening brief, public citizen being commissioner of FDA. You're saying it has no import to the question of whether or not there's been a final denial, right? That's correct. And they rely on it to show that the agency's position is that gender alteration surgery isn't medically necessary. But the secretary has not made that determination. But then you turn around and rely on it as saying the agency is working towards this, and then say, but it's been withdrawn. I mean, I don't understand how you can rely on it as the agency is making progress on this issue when in this letter they say it's been withdrawn and we're not going to do anything else until you appropriate fundings. Well, and the public citizen case via FDA is a good explanation why, Your Honor, because the agency can go through a process where it proposes something, it withdraws it, as it thinks about the issue more, it does some more thinking, it collects some more evidence, it considers the issue. And that case indicated that when- Yes, but usually when the agency goes through more thinking and collects more evidence, it issues a notice to the public to submit comments or submit evidence, or it does something of the like. We have no indication that you've done anything since November of 2016. Your Honor, if it gets to a proposed rulemaking, yes, but if they're reconsidering the notice that they- or the proposed rule they had previously considered and are trying to reconsider now, there's nothing that would normally come out and be issued to the public or published for notice and comment why they're still considering the issue. And this is a very important health issue. Nobody disagrees about that. But isn't that the point of- I mean, as Judge Toronto was talking earlier, I mean, even if there are difficult issues that require further analysis, isn't that part and parcel of sending out the notice and getting comments on those issues? Or how much do you have to do beforehand and how much do you do until you decide? The notice, you'd have to take a position on the notice, as Judge Toronto pointed out. Do you agree with that, by the way, that it can be a kind of neutral notice? I don't think there's anything that would preclude the agency from doing that, Your Honor, although it would be passing string. 553A3 specifically says give notice of a proposed rule or the issues to be discussed. Right. But normally, I mean, in the normal- I don't think there's anything that would preclude it, but normally agencies decide what they want to do and then they issue a proposed rule. But that's possibly more frequent when you're talking about operating on a clean slate, whereas in this circumstance, we don't have a clean slate. There's a rule in effect that does one thing and they're thinking about removing it. So it might make more sense, at least in that context, to not take a position because they've already made it, right? You understand? Well, they have the injustice and that is their position. Yes, and that's a little different than if you're operating under a clean slate, I would think. Perhaps, but I think it's here, again, that the secretary is the one with broad discretion, as this court has recognized, to determine what benefits are needed. And I think the agency, again, can be considering, again, we don't have the agency's reasons behind, which is why we think if this court thinks there's a remand would be appropriate. But can I ask, I mean, you actually have a client here, right? In some sense or other, the secretary is your client. Any enlightenment about, A, is the secretary and the sec... I guess there's an acting secretary now. Is the acting secretary and the people who work for the acting secretary, are they engaged in anything that might, two things, might be considered active consideration of this. And second, any enlightenment about what, I guess, then-secretary and undersecretary Shulkin meant by this, when appropriated funding is available. I mean, I suppose one might read it to mean that change is not going to be made when the, until appropriate, appropriated funding is available. But it might also be read to mean we're not even going to explore the issue until appropriated funding. And I'm not quite sure how to read that. That's a two-part question. What do you know from your client? I don't have any information as to... Again, I can't point this court to specific things that the agency is undertaking now on this rulemaking. But I can say that the petition for rulemaking has not been denied. It is pending before the agency. But pending in actively considering it or locked away in a manila folder in somebody's cabinet because they're not doing anything on it? Your Honor, there is a presumption of regularity in agency action, like that they are not just putting it aside. Yes, but we don't have a blank slate here. We have a letter from the secretary that can be read as suggesting they're not going to do anything on this. Your Honor, I just don't think that's with all due respect. I don't think that's a fair agreement of the letter when it says we have been, has been, and will continue to explore regular change. Can I ask you another question? You referred a little earlier to medical disagreement. Are you aware of any significant disagreement by mainstream established medical organizations that deny that these kind of procedures are necessary for gender dysphoria? I'm not sure exactly what I, your definition of what qualifies as mainstream, Your Honor. But there are other studies that have been done that question whether gender transition surgery or even some of the hormonal treatment, how much that remedies the underlying effects of the medical condition of gender dysphoria. And where are those studies from? For instance, there's a DOD report that discusses this and says that it's not clear, which relates to the military's policy. The military policy is a completely different question. That's about ability to serve and the like. And you can be perfectly, you know, this is whether it's medically necessary. Yes, but I agree that the issues are different. But in that report, the DOD report, it cites to some medical studies, which they say create uncertainty about the effectiveness of surgery as a treatment for the underlying condition of gender dysphoria. Which report is that? Is that the latest one  the exclusion? Yes, Your Honor, that is. And there are a lot of reports previously from past DOD reports that go the other way. Yes, and that report discusses those reports also. But there is evidence in the community that there is a disagreement in medical uncertainty on that point. And the VA, again, we're in the world of the hypothetical here, but the VA could reasonably decide to be looking at all that research that's going on by DOD, by other doctors, by other organizations, and decide to take this on to consider. The VA has a very unique population that it takes care of, and there are certain risks there. They have a high incidence of suicide in their population and other medical risks, which warrants them to be cautious. Doesn't that underscore why you need to make a decision on this now? If, again, they want to be cautious because deciding one way or the other is going to have an effect on this population. And I think the VA is allowed and permitted in their discretion. How is it going to have a detrimental impact on this population? Well, if, for instance, the surgery is not effective on the underlying conditions, gender dysphoria, that could make things worse, allowing that surgery could possibly have a detrimental effect. Are you aware of studies that say it makes it worse? I thought you were just talking about studies that says it's not effective in completely treating gender dysphoria. That's fair, I think, Your Honor, in which case the secretary also can take in constant account to not provide a procedure that is that the effectiveness, there's a cost benefit. Are you aware of any, I think I already asked you this, you're not aware of any situation where the VA has denied medically necessary treatment because of cost? I don't think I can phrase it quite that way, Your Honor, because I can't agree with that characterization because cost is very much a part and Congress has instructed. Ruled out entire classes of treatment that's generally deemed medically necessary. I'm not talking about an individual case. Well, there are other exclusions in, for instance, the exclusions list, IVF treatment was not covered. Now, Congress did provide separate appropriation for that, but that's in the exclusions. So there are a few others. But the costs involve just the procedure because it's my understanding that they do, the VA does cover costs associated pre and post surgery. So to the extent surgery causes, arguably, I think you were saying, might cause some other things to happen. I mean, that's already covered by the VA. That's not an additional cost posed by the surgery because people are free to go out and have their outside the surgery and the Veterans Administration is already committed to covering the costs of post and pre. That's correct, Your Honor. It's just the cost of actually providing the surgery, which given all the costs on the VA and what they want to cover and all the benefits, the Secretary, I mean, Congress has instructed the VA to consider costs. There are several provisions. And you're still, and the report on costs, the cost estimate was 17 million, correct? Correct. But that's still 17 million that could potentially not be spent on something else. And can I ask you, it's all in the realm of hypothetical. No, I understand. Well, let me ask you another hypothetical. And I appreciate that you were resisting Judge Toronto's invitation to suggest what the reasons are for the delay. Hypothetically, if the real reason were that we've had a change of administrations and we had to fill 16 Assistant Secretary slots, many of whom are involved in this, and we haven't gotten one confirmation through the Senate, and now we have a transition with respect to the Secretary. It's just a matter of manpower in the transition. Do you consider that a legitimate basis to excuse unreasonable delay or not at all? Because you just can't go there. I mean, perhaps the court could consider that in the unreasonable delay analysis if that was, if it was- But not really. A factor on the passage of time. But again, we just,  that's been set on when the VA needs to decide a petition for review. And frankly, it's not in anybody's interest to hurry the VA up past, beyond how it can, if it wants to give something, consider judgment and maybe- I know every case is very different, but do you have a statistical historical analysis of how the petitions for review, how long the VA is taken historically? I do not, Your Honor. I would imagine it would vary greatly depending on the petition and the complexity of it. And so I don't have that number for Your Honor. In your view, if we want an explanation for the unreasonable delay, the only way we can do it is actually go through the track factors, find unreasonable delay, and remand it back to the agency. You don't think we can issue an order saying in 90 days you have to respond to why the petition for rulemaking hasn't been ruled upon? I think it would certainly be a difficult jurisdictional question, Your Honor, and I'm not sure this court would have jurisdiction to do it again, because I think- I'm sorry, why is that a difficult jurisdictional question? My understanding, correct me if I'm wrong, is that the unreasonable delay prong of the analysis typically takes place under 28 U.S.C. 1653, not under 502, and under the theory that it's in aid of the jurisdiction to ultimately do the review once the thing is decided. So why isn't it in aid of the 502 jurisdiction to issue an order under 1653 saying tell us why- what's going on? I agree in part, Your Honor, that it is in aid of the 502 jurisdiction, but the 502 jurisdiction doesn't kick in unless there has been a denial. So whether there's unreasonable delay so that the agency has not- has effectively denied- 1653 is always in aid of some other jurisdiction. Correct, but I think since you'd have to find that there is unreasonable delay in order to find that it needs to be in aid of jurisdiction here. Well, but if we apply the track factors, don't we- couldn't that be a reason that we need some more information? I mean, it says- one of the last factors, the court did not find any impropriety lurking behind the agency lassitude in order to hold that agency action is unreasonable delay. Isn't it difficult to evaluate that with no rationale coming in from the agency side? I don't think so, Your Honor, because that's generally been sort of concerned allegations of bad faith. And here there's certainly no allegation of bad faith. And again, it's not an instance of agency recalcitrance. We've seen that the agency has been doing something. Granted, there's been a bit of time where there's nothing on the public record, but there is the notice of proposed rulemaking. So it's certainly- and, you know, and there's no congressional timetable of when the VA needs to respond for a petition for review. And we all know the VA has a lot of competing priorities and issues to deal with. So given all that, I think it would- this court would be hard pressed to find that less than two years now is unreasonable delay of the type this court and the D.C. Circuit have found in other cases. Thank you. Thank you. Thank you. If I may, Your Honor, I want to correct one misstatement I made. Medicare has the national coverage determination which provides for sex reassignment surgery in medically necessary cases. Medicaid is left up to the states, and an increasing number of states cover sex reassignment surgery. I want to talk first about the track review. First off, Section 706 specifies that the court should set aside agency action unreasonably delayed. So I don't think it's purely a question of mandamus or all-rich jurisdiction. There's statutory jurisdiction under 706 to set aside that action. And under 502, you have jurisdiction to implement 706 by setting aside action- I thought 502 is the only jurisdictional provision, and the APA is, in fact, not jurisdictional. It just sets out standards of review for the exercise of jurisdiction otherwise given. Didn't Califano against Sanders say that? I think- So it's either WWHT or TRAC itself that recognizes that 706 supports the exercise of jurisdiction under the APA to set aside agency action that's been unreasonably withheld. And so, I mean, this court's ability to set aside agency action that's been unreasonably withheld, I don't think is in question. But the APA does specify that the agency cannot unreasonably withhold its decision. The petitioners have a right to petition the agency. They have a right to a response from the agency, and they have a right to seek court review. And in this case, the agency is not representing anything specific to this court that it's done in the last 18 months to advance the cause here. Does 555B or C or something play a role here? Isn't that also a- agencies have to respond to petitioners? It's just 555E. E? I mean, I never read 555 before this case. So it says that the agency has to respond. I think there may be some adverb in there about promptly or reasonably or something like that. But it's all subsumed in the TRAC analysis. But with respect to the TRAC analysis, first off, I concede that the mine run of TRAC cases finds unreasonable delay only after four or six or more years. But the D.C. Circuit has been insistent that delay under TRAC is measured in terms of weeks or months and not years. And the other five factors go to tease out when the delay is unreasonable. And here, the most important thing is this is not a case about economic regulation. This is not a case about rate returns under the California power scheme. This is about veterans whom this court owes a special solicitude towards dying because they are being deprived of sex reassignment surgery, medically necessary sex reassignment surgery. No other remedy has been, in their particular case, has allayed their symptoms of gender dysphoria. Their suicide rate is high. And sex reassignment surgery has been demonstrated in particular cases to allay the symptoms of gender dysphoria. Do you think that that portion of the February 2018 DOD report, around pages 23 to 27 or something, that discusses the RAND study and the Swedish study and I forget what all they are. It's not specifically about ability to serve well in military service, but simply about what's called the medical studies about actually a range of the gender dysphoria treatments, but including the surgical part. Are relevant, that that's relevant to this question? No, Your Honor. Let me be entirely clear about it. There is no disagreement among responsible parties about the medical necessity of sex reassignment surgery in particular cases. As I'm sure you're all aware. But it sort of depends what you mean by responsible parties, right? There are organizations that have votes in houses of delegates. That's not usually the way we do science, right? So the question is, what do the specific studies say? And what conclusions do you draw from them? That's what I think those pages of the DOD. I think the DOD report, first off, needs to be read in the context of the question that was put in front of the panel of experts by Secretary Mattis. The question there is, do transgender service members, active duty service members, pose a risk to lethality, readiness, and unit cohesion? That is not the question before this court. So the question of the medical necessity. That's why I was just focusing on those pages. I understand. But I do think the context there is important. The question of medical necessity and to what extent medically necessary sex reassignment surgery allays the concerns. The question there was, to what extent does it relay the symptoms in order to ready someone for battle? And does it detract from the ability of a unit to cohere on the battlefield? So I don't think that the analysis that was performed there is at all relevant to this question. Can I ask you the same question? I think the chief asked, asked Ms. Dorsey. Is it a legitimate consideration as to the timing of response that the senior positions at the VA have not been filled? If that were the agency's position? Well, we don't know. We actually have no, we haven't been given any explanation. I understand that. But if the agency were telling you that there are delays because there are senior personnel responsible for decision-making who are not confirmed by the Senate, that may be something you would want to consider. I would still take the view that those concerns are outweighed by the profound medical need confronting the nation's veterans. But that's certainly a factor this court could consider. But those concerns might be at least a little bit more legitimate if we knew the underlying personnel were actually moving forward on the rulemaking. We were just awaiting confirmation from somebody that can actually sign off on it. Absolutely. And I think the agency's inability to represent that there is anything going on is inexcusable under track or even under the finality analysis. The point of the finality analysis is to look for indicia of whether the agency is at rest on a particular issue. That letter from November 10th, 2016, coupled with the agency's representations before this court should indicate sufficiently to the court that that was a final determination. Their decision-making process for all intents and purposes is consummated. We have been denied relief as a result of the decision reflected in that letter. And the intervening time period and counsel's concession before this court suffice to corroborate the indicia of finality present in that letter. I want to, if I might just... Can I just ask you one more question? I know you want us to order a rulemaking, but if we're not willing to go that far and we just want the VA to respond about what it's doing and what its decision is, they suggested 120 days, and I think in your reply brief you suggested 90. Do you have any real objection to giving them 120 days? I do, but I don't think that I could justify the difference in 30 days. But to be clear, Your Honor, I do think one distinction is important. I don't think it is reasonable to remand to the agency to explain its delay. That means that we would have an explanation of the delay rather than the substantive disposition of the decision. You agree with your friend that we should just... If we go that way, we have to apply track and find unreasonable delay. No, I think that you can find that the November 2016 letter is a denial or... Right, right. Assuming we don't agree with that. Assuming you don't agree with that, and you find that the agency decision has been unreasonably withheld, I think, in our view, rulemaking is the right remedy. But following your logic, I think a remand is necessary for the agency to give a decision. We are entitled to a decision on the petition. We are not entitled to an explanation of why it's taking so long. We are entitled to judicial review of action that has been unreasonably withheld or a denial or we obviously wouldn't appeal a grant. Wait, what do you say? I mean, you're entitled to either have them do it or based on a conclusion, and that's based on a conclusion that the delay has been unreasonable. If we were unable to conclude on this record that there's been an unreasonable delay, then what's the problem that a predicate to ordering them to do it or to do something or to issue an order should be? That's fine. That's certainly fine. I think my only concern is I wouldn't want a remand for the agency to explain its delay. Does that make sense? No, because that's my point. If we don't have a basis to conclude whether or not it's reasonable or not based on this record, why would we not want to remand to give the agency an opportunity? Obviously, if they come up short, then the next step would be they haven't persuaded us it's a reasonable delay. To be frank, Your Honor, I don't think that remedy is appropriate in this case. We've been waiting two years for an answer on our petition. A conclusion by this court that the agency has unreasonably withheld an answer for the agency to then get 120 days to explain why it's been delaying for us to then come back to this court to appeal the decision that it's been unreasonably delayed because their explanation doesn't suffice. Two years from now, I'm going to be standing in the same position, arguing that there should be a remand for them to now give a reasoned explanation of why they denied our petition on the merits. And quite honestly, veterans are entitled to better. We're not entitled to, you know, not me, my clients are not entitled to a remand from this court for the agency to finally getting around to justify its two year delay to the people of the United States. Thank you, Your Honor. We thank both sides. The case is submitted. That concludes our proceedings for this morning.